The next case is case number 4-14-0711, State of Illinois v. Michael Fogarty. Appearing for the appellant is attorney, is it Cheryl Baragasi? Baragasi. Baragasi. Okay, thank you. And I'm sorry, I've had that problem before. One of these days I'll figure it out. And for the appellee is attorney, Amy Sipes Johnson. Counselor, are you ready to proceed? Yes, sir. You might. Good morning, your honors, and may it please the court. Counsel, my name is Cheryl Baragasi. I'm from the Office of the State Appellate Defender, and I represent Michael Fogarty. This case is about procedure. The procedure is necessary to preserve an issue on appeal, but also the procedure is necessary to abide by the mandates of the Fourth Amendment. These procedures are well settled, and yet these procedures were disregarded in this case. Turning to my first point, your honors, Mr. Fogarty's stipulated bench trial was tantamount to a guilty plea because the State presented its entire case by stipulation, and Defense Counsel failed to preserve a defense. The State agrees that it presented its entire case by stipulation, so the only remaining question is whether Defense Counsel preserved a defense. Defense Counsel did not preserve a defense where Defense Counsel did not file a post-trial motion challenging issues on appeal. The State is asking this court to find that there is no need to file a post-trial motion to preserve an issue on appeal. This is an unusual departure from the State's usual stance that a post-trial motion is required. And for the last 30 years, since People v. Enoch, this court and every other Illinois court has held that to properly preserve an issue on appeal, a party must subject to trial and must file a post-trial motion. Defense Counsel did not do so in this case. The State argues that in the framework of a stipulated bench trial, Illinois courts have found defenses preserved absent a post-trial motion. But the cases that the State cites do not stand for that proposition. For example, the State relies heavily on the People v. Horton in the 1991 Illinois Supreme Court case. In that case, the defendant was convicted after two separate stipulated bench trials. But the issue before the court in that case was whether Defense Counsel had conceded the sufficiency of the evidence to convict, not whether Defense Counsel had preserved issues for appeal. The court held that the first stipulated bench trial was not tantamount to a guilty plea because while Defense Counsel had conceded the sufficiency of the evidence to convict, it was only in closing arguments. In self-holding, the court noted that Defense Counsel had preserved defenses, specifically the motions to suppress identification evidence. While there was no mention of a post-trial motion, that was not the issue before the court. And considering that Horton occurred a mere three years after Enoch, the reasonable inference is that where the court found that a defense was preserved, a post-trial motion must have been filed. Similarly, in the other cases the State cites to, just because a post-trial motion was not mentioned does not mean that a post-trial motion was not filed. In cases where Illinois courts have found defenses preserved but the cases do not mention the post-trial motion, the reasonable inference is that a post-trial motion was filed and that the courts did not contradict the express mandate of Enoch. Furthermore, Defense Counsel did not preserve a defense by filing a motion to reconsider Mr. Fogarty's sentence as excessive. Under Illinois Supreme Court Rule 605A, a motion to reconsider sentence is filed to challenge sentencing issues and any aspects as to the sentencing hearing. Preserving a sentencing issue does not fulfill the purpose of a stipulated bench trial. However, if this court finds that Mr. Fogarty's stipulated bench trial was not tantamount to a guilty plea, then Mr. Fogarty's motion to suppress should have been granted where he was subjected to an unreasonable, warrantless, and non-consensual blood test. Before you leave this last issue, in this case a motion to suppress was filed and heard, correct? Yes, Your Honor. Under Horton, wouldn't that be sufficient to constitute the preservation of a defense for purposes of a stipulated bench trial? Your Honor, the Illinois Supreme Court did not expressly find that in Horton. In Horton, there was no mention of a post-trial motion, but that does not mean that a post-trial motion was not filed. The question before the court in Horton was specifically whether Defense Counsel had conceded the sufficiency of the evidence to convict, based on certain comments that Defense Counsel made during closing arguments. Based on my research, no case or no court has held that filing a pretrial motion to suppress or any pretrial motion automatically preserves that issue. In fact, Enoch expressly states that in order to properly preserve an issue, a defendant must file an objection at trial and a post-trial motion. Well, but there is also the constitutional issues exception to the forfeiture rule, and didn't the motion to suppress involve a constitutional issue? Yes, Your Honor. Under People v. Enoch and People v. Almond, a court may reach a constitutional issue, but the distinction lies in whether a defendant is actually preserving an issue and whether the court may reach an issue. A defendant only preserves an issue by filing an objection at trial or making an objection at trial and filing a post-trial motion. The court rate may reach constitutional issues for purposes of judicial economy. The Illinois Supreme Court has held that constitutional issues should not wait until a post-conviction proceeding to be brought up. But the distinction there does lie between whether a defendant has preserved the issue and whether the court may reach it. And in this case, Mr. Bogarty did not preserve the issue because Defense Counsel did not file a post-trial motion. However, if this Court does find that an issue was preserved and that the stipulated bench trial was not tantamount to a guilty plea, then Mr. Bogarty's motion to suppress should be granted because there were no exigent circumstances and no consent to justify a warrantless blood test. The trial court denied Mr. Bogarty's motion to suppress after finding that there were exigent circumstances sufficient to justify the warrantless blood test and that Mr. Bogarty had consented to the search. The exigent circumstances exception to the Fourth Amendment requires the court to examine the totality of the circumstances to determine if there are sufficient exigencies to excuse the warrant requirement. It should be noted in this case that not one of the 14 officers present at the exigency attempted to obtain a warrant. In fact, the record establishes that when Officer Saunders noticed the open alcohol bottles and smelled the odor of alcohol, he reached for a DUI kit. He did not seek a warrant. Fourth Amendment case law presupposes that officers intend to obtain a warrant but are unable to do so because the delay necessary to obtain the warrant threatens the destruction of evidence. But there is nothing in the record to suggest that even one of those 14 officers intended to obtain a warrant. Even if you're successful in that regard, aren't you left with the other blood draw that was performed in the course of medical treatment that established a BAC of .176? Yes, Your Honor. This court could affirm the trial court's judgment on any grounds including the medical records exception. However, we ask that this court not rely on the medical records exception because for this court to rely on the medical records exception, this court would have to find that Mr. Fogarty's Fourth Amendment rights were violated when he was subjected to the unreasonable, warrantless, and nonconsensual blood test. And had the trial court not erred in denying that motion to suppress, Mr. Fogarty may not have proceeded by way of stipulated bench trial. And if Mr. Fogarty had not proceeded by way of stipulated bench trial, he would not have stipulated that the evidence was taken at Carle Hospital. Thus, the trial court's error in denying the motion to suppress tainted the subsequent proceedings, and that is why we ask that this court remand for a new trial. Why would the exclusion of the first blood draw, being the subject of the motion to suppress, somehow trump the later blood draw in the defendant deciding whether or not to stipulate? Your Honor, after the trial court denied Mr. Fogarty's motion to suppress that evidence of the later blood draw, was going to come in. And so if this court finds that the stipulated bench trial was not tantamount to a guilty plea, then there is no purpose for that stipulated bench trial. The only reason to go through a stipulated bench trial was to preserve the issue of the motion to suppress. But if the motion to suppress had been granted, then the State would have left its burden to bring in that medical records exception, which meant the State would have to prove that that blood test was taken within the proper means as required by the statute. But because the evidence was already coming in, Mr. Fogarty might have decided to go through this by way of stipulated bench trial. Thus, it's prejudicial because had the trial court not erred in denying the motion to suppress, Mr. Fogarty might have proceeded by way of bench trial or by jury trial. Further, Your Honors, under the exigent circumstances exception to the Fourth Amendment, the trial court had to consider the totality of the circumstances, which included that procedural red tape should not have factored into whether there were sufficient exigencies to justify the warrantless blood test. You mentioned there were 14 officers. Yes, Your Honor. Were they, in terms of the scenario, they're all either present at the scene or at the periphery of the scene or available to each other? Your Honor, based on the testimony of the trial, it seemed that there were 10 Matino police officers that were either at the scene or at the hospital, and there were two Illinois State police officers and two Charleston State police officers. This is a multiple vehicle accident? Yes, Your Honor. There were four vehicles involved. How many fatalities? There was one fatality, but there were numerous injuries. However, the massiveness of the accident does not negate the Fourth Amendment warrant requirement. It doesn't negate it, but it's another. Plus the passage of time. I mean, I know that, you know, that a blood alcohol may dissipate, so that is not per se. That's just saying you can't rely on that alone. It's not saying that's not a factor. Yes, Your Honor. And if you add that to the need, possibly, for those officers to attend to those at the scene and investigate and so forth, I don't know. It sounds like it's an exited circumstance, or it could be argued that it's exited. Your Honor, while there was a time delay and there was a massive accident, that didn't change the fact that there were numerous moments in time where Officer Saunders could have reached out to another officer to obtain a warrant. Now, there was a four-hour delay. The accident occurred at 8.30 p.m., and the blood test was administered at 12.40 a.m. Between those four hours, some of the delay can be attributed to the fact that Mr. Fogarty was transferred from Sarah Bush Hospital in Mattoon, Illinois to Carl Hospital in Urbana. But a lot of that delay can be attributed to the fact that no one was attempting to get a warrant. For example, when Officer Saunders' squad car broke down when he was on his way from the Mattoon Police Department to Sarah Bush, he could have called one of the other 13 officers to obtain a warrant. Similarly, when he reached Sarah Bush, Mr. Fogarty was being prepared to be transferred to Carl Hospital. At that time, knowing that Carl Hospital was 45 to 50 miles away, Officer Saunders could have called one of the other 13 officers to obtain a warrant. He did not do so. Also, instead of following Mr. Fogarty immediately, Officer Saunders stayed at Sarah Bush and collected statements. And while he was collecting statements, he was then directed back to the scene of the accident to take measurements and photographs. At that time, he could have asked one of the other 13 officers to obtain a warrant. What was his explanation for what he viewed as exigency? Your Honor, it doesn't seem... I mean, didn't he testify, or am I mixing it up with another, about, I would have had to confer with so-and-so, who would have had to confer with so-and-so, who would have had to obtain a state's attorney, who would have had to talk to a judge. Yes, Your Honor, Officer Saunders did testify as to the process to obtain a warrant. But in his testimony, it was clear that a warrant could have been easily obtained. In fact... Easily? It could have been promptly obtained within that four-hour time delay. In fact, the McNeely Court specifically stated that technological developments that allow officers to promptly obtain warrants should be relevant to the exigency determination. Now, Officer Saunders testified... So, in Coles County, judges' access to technology at night permits them to issue warrants through what? FaceTime? Well, Your Honor, there is nothing in the record to suggest that the judges couldn't have issued the warrant. In fact, Officer Saunders testified that there was a judge available every hour of every day of the week and that Officer Saunders had gotten these warrants, obtained these warrants in the past, and that five paragraphs would have constituted a sufficient complaint to obtain a search warrant in this case. Even besides all that, Officer Saunders testified that the Mattoon Police Department had a streamlined process in which to generate warrants. Now, this process was in a detective's computer behind locked doors, but the process existed. There were technological developments in Mattoon County that would have allowed officers to obtain those warrants promptly, and that was something that the trial court should have considered when determining whether there were sufficient exigencies to justify a warrantless blood test. The part about the locked doors also? Yes, Your Honor, because that would have been an obstacle for the officer. But based on the trial court's findings of fact, it seems as if the trial court did not consider those. In fact, the trial court said... May we? Yes, Your Honor, because when looking to see whether it was a Fourth Amendment violation, the ultimate question is denovo, is review denovo. So, did anybody testify that there was an assistant state's attorney available every hour of every day? No, Your Honor, but from the testimony, it can be inferred that there was a state's attorney on call. It seems as if Officer Saunders just...it never occurred to Officer Saunders to obtain a warrant. And that was part of the flaw in the trial court's analysis, was that the trial court's findings of fact was that the officer had some car troubles, which are unusual, but some four hours later, at the officer's arriving at Urbana, he doesn't know at that point whether or not he needs a search warrant. He doesn't know at that point whether or not the defendant was conscious and able to give consent. He doesn't know at that point whether the defendant would refuse consent. The problem is that Officer Saunders was not supposed to wait four hours after the accident to determine whether a search warrant was required. Officer Saunders was supposed to make that determination at the same time he decided to get the DUI kit. Four hours later, there are greater exigencies, even in the case of BAC evidence, because the evidence is gradually dissipating. It's certainly an unusual chronology here, and BAC scenario involving non-functioning police cars. The exigent circumstances you're saying are somewhat self-created here by law enforcement. Do you have any case law that supports the proposition that when they are self-created, that they should not be considered exigent circumstances? No, Your Honor. I can't cite any case law that indicates that when officers create exigencies, they should not be considered. But at the same time, we were not arguing that Officer Saunders deliberately created these exigencies. It was clear that Officer Saunders simply was doing the best investigating he could. The flaw was that when the trial court looks to see whether there are exigent circumstances to justify a warrantless blood test, the trial court has a duty to look at the totality of the circumstances and determine whether the officer's determination was correct. And in this case, because most of those delays can be attributed to procedural red tape, those delays should not have factored into whether there were sufficient exigencies to justify a warrantless blood test. Now another ground in which the trial court denied the motion to suppress was consent. But consent does not justify the warrantless blood test where Mr. Fogarty was unconscious when the blood test was administered. Fourth Amendment consent requires looking at the totality of the circumstances to determine whether an individual's consent is voluntary. The trial court relied on Illinois' implied consent statute to state that Mr. Fogarty consented because his unconsciousness at the time of the blood test evidenced his inability to revoke consent. But the state could not rely on Illinois' implied consent statute to impute Fourth Amendment consent onto Mr. Fogarty. Because Mr. Fogarty was unconscious at the time of the blood test, he was incapable of manifesting actual voluntary consent, and he was incapable of revoking consent. Thus, consent does not justify this warrantless blood test. Therefore, Mr. Fogarty's motion to suppress should have been granted where neither exigent circumstances nor consent excuse this warrantless blood test. Does the Court have any further questions? I don't see any. If not, we ask that this Court vacate Mr. Fogarty's conviction and remand for a new trial. Thank you, Your Honors. Thank you. Ms. Johnson. Good morning. May it please the Court. Counsel. Excuse me. Defendant first argues that his stipulated bench trial was tantamount to a guilty plea. He recognizes that he did forfeit this, but he seeks plain error review. It is our position, however, that there was no error at all. As counsel has already said, the only issue in contention at this time, excuse me, is whether the defendant preserved a defense. Although the defendant argues that he did not preserve a defense for appeal, the record clearly shows that a motion for reconsideration of sentence was filed. Admittedly, that motion did not include the issues that are raised in the brief here, but the motion was filed and a defense was preserved for him to move forward with at that point. Let's say we disagree with that. What else do you have? If you disagree with that, we also believe that case law supports our position that the issue of the warrantless blood draw was preserved as a defense based on comments that were made during the hearing on the motion to suppress. And we cited in our brief case law from every appellate court and from the Illinois Supreme Court where the courts reviewed whether a stipulated bench trial was tantamount to a guilty plea. And in each of those cases, there was no evidence that a post-trial motion was filed. Now, I recognize counsel's argument is that in the absence of mentioning specifically a motion was filed, it's speculation to say it wasn't. Similarly, it's speculation to say it was. But if you look at the language of those cases, it supports our position that they considered verbal comments in finding that the defense was preserved. I mean, there was a motion to suppress that was filed, so it seemed very clear that the defendant was seeking to suppress the blood draw. It's a constitutional issue, so it would fall within the constitutional issue exception. The issue here, though, is does, say, people beat Horton allow for that in the absence of a post-trial motion? Now, I can't tell in reading Horton whether or not there was a post-trial motion filed. And I agree with you. It does not specifically say one way or the either that a post-trial motion was filed. But it does say when it was looking at the issue of a defense being preserved, it makes reference to verbal comments that were made by counsel. And then it found a defense had, in fact, been preserved. That is consistent with what this court recognized in Pollard. And it found that defendants' comments to the court established defendant wished and intended to preserve a defense. In Hawkins, the Fifth District, it's apparent defendant used a stipulated bench trial to preserve the suppression. Again, in the Fourth, in Ford, it appeared the defendant used a stipulated bench trial to preserve a defense. In Sampson, it sought to preserve, by its language, a defense. And in Young, the defendant had intention. The language of these cases is significant because why would the courts be analyzing verbal comments to find what defense had been preserved if a post-trial motion had been filed? The courts would not be using the language apparent, wished, intended, sought to preserve, or the language. It just wouldn't happen that way. This supports our reading of these cases, even though we acknowledge that they don't say specifically, there was a post-trial motion filed. Perhaps recognizing this, defendant attempts to distinguish the cases that we cite by saying that in those cases, there was an unequivocal and an unambiguous statement made during those hearings that made it clear the defendant there wished to pursue appeals of these issues. Here, the defendant's argument seems to be that because defense counsel was not quite as vigorous in his statements to the court at the motion, that those statements were insufficient. Notably, though, defendant cites no case to support this contention. What the record shows is that the defense counsel recognized the only viable defense here was to get the blood alcohol content suppressed. At the motion on the hearing to suppress, the trial court was asking defense counsel, if I've already made a finding of exigency, which is all I have to do, I don't have to find multiple grounds for this. If I've already found the exigency, do I also need to find an implied consent ruling as well? The defense counsel responded that it was their position, the implied consent statute, and the constitutionality of it was called into question. Therefore, counsel wanted the court to make an additional finding under the implied consent statute, so that if a conviction followed, the issue would be available on appeal. That isn't any different than the cases that we cited, even if it wasn't stated with this much boldness. So the cases support our position that this defense was preserved, even in the absence of a post-trial motion. And as you've noted, and as I've noted in my brief, ENOC is a general requirement. And there are exceptions, including the constitutional issue exceptions. I also want to say that although defendant backed away in the reply brief a little, I stand on the concerns that I raised, that there were allegations made that the trial court and that both counsels somehow worked together improperly in the hearings, in the trial. The court can read the brief itself. You can see what the statements are. And what defense brief statement says is that there was an across-the-board recognition that the stipulated bench trial was tantamount to a guilty plea. Therefore, the court made intentional clarifications to the record, recharacterizing the trial. Now, that is not one long sentence, but those are quotes from about two paragraphs that seem to me that I will stand by, suggest there were improprieties in recharacterizing this trial. So I stand by that it is something that is improper to allege without evidence to support it. The state would ask that you find there was no error, no plain error, and that you would affirm. Moving to the motion to suppress, defendant argues that the motion to suppress should have been granted because warrantless blood tests are a violation of Fourth Amendment rights. We argued in our brief there are exceptions. Two of them are exigency and consent. First here, there was exigency. McNeely identified a variety of circumstances, not an exclusive list, but highlighting certain circumstances that certainly are fair consideration for exigency findings. Those include a need to provide emergency assistance, to engage in hot pursuit of a suspect, and to enter a crime scene and investigate its cause. Significantly, as Justice Connett pointed out, McNeely also said you still get to consider the imminent destruction of evidence, and the natural dissipation of alcohol from the blood means that it is destructing over time. So it is not a per se exigency, which McNeely made quite clear, but it is not to be ignored. It is a valid consideration with everything else that can be considered in finding and weighing exigency. There was extensive evidence of exigency presented, and I will not go through all of it, but I will highlight certain parts. First, there was exigency based on law enforcement's need to provide emergency assistance. Again, this was one of the examples specifically mentioned by McNeely as fair for consideration. Emergency assistance at the scene required the help of two Charleston police officers, four private ambulances, ten Mattoon police officers, two Illinois State police officers, nine Mattoon fire department personnel, four emergency medical technicians at the scene. All of these responders were required to treat 11 victims out of four separate vehicles that had to be transported. Two of the victims had severe injuries and had to be transported further from Sarah Bush by helicopter to Carl Clinic, and one of the victims unfortunately died. There was clearly compelling need for emergency assistance by these officers, and that is a valid consideration of exigency. Now add to that the time of the accident and the ready availability of law enforcement and judicial personnel for a warrant. The state's attorney's office has procedures where when things happen, someone is contacted, just as the judicial officers have as well. But it's being readily available. The fact that an accident happens does not mean ten minutes later there are people available. Before I go on that further, I want to mention that counsel suggested the first thing you were to do when you have something like that is to go get the warrant. Cases have recognized not necessarily is that true. You have the right to see if you can get consent from a defendant. It is legitimate to do investigation before seeking the warrant so that you don't have to go get multiple warrants then to cover everything that you may discover during that investigation. It's not an excuse to delay this inevitably, but it isn't accurate to say that your first and primary consideration of your time when you come across something like this is to abandon everything and get the warrant. Well, Saunders was directing traffic as part of his duties there, right? Like you're saying, some of these things have to be done in order to protect the public, make sure that there isn't another accident before proceeding to do these other things. Correct. And as I said, this happened late on a Saturday night. And the defendant drove his car at 92 miles per hour into four vehicles and injured 11 victims, killing one. That was a slight reduction from the 111 miles per hour he was traveling 2.5 seconds before the impact. And it resulted in a chaotic scene that required a lot of attention. Officer Saunders testified that at that time of the night, there weren't detectives on duty. They were available to be called, but they were not on duty. So there would have been a delay to contact the officer, to wait for the detectives to get there. Then warrants in Illinois have to be, complaints for warrants in Illinois must be put in writing. There is time that it takes to do that. To fill out a complaint for warrant, you have to have some information. So you can't do this without some investigation up front as to the facts that will support that warrant. Then you have to contact the state's attorney's office. Then you have to contact the judge. It's built in delay. It is not intentional. It's the facts of the case that we have. Then you have to continue with the fact that the defendant here had necessary medical care. Again, the time it takes to transport a victim or a defendant for medical care is something that is considered when determining exigency. And I think Officer Saunders, and I think most people would say, he was correct in saying, as I arrived, and I see this defendant being taken by flight personnel and medical personnel to a helicopter because of the severity of his injuries, it's not proper for me to halt that care to get this blood test. Again, not ideal situation. The fact that the computers for the draft of the complaint for the warrant was kept in a locked detective's office, that's office management. It's reasonable to secure your detective's offices and all of the things that they have with them. But it took four hours? One hour was driving to Carl Clinic. And then you have approximately three hours from the accident that that leaves you with. And based on the facts here, Your Honor, yes, three hours. And I want to address, these were not, as alleged, police-created exigencies. The law means something when it talks of police-created exigencies. And what Kentucky v. King has said, which is a U.S. Supreme Court case, law enforcement personnel acting in a lawful manner is not police-created exigency. It's when the police conduct violates the Fourth Amendment or threatens to violate the Fourth Amendment. The examples that are given here is that he was creating an exigency by investigating the accident. That's not a violation of the Fourth Amendment. McNeely says that's permissible for consideration. Next he says it was because the officer's car was malfunctioning and that the officer followed command administration and administration rules. Well, as I pointed out, the officer had no choice but to follow command and administration. And again, those are not examples of violating Fourth Amendment principles. None of the examples that are provided violated Fourth Amendment principles. And all of the examples, the police were acting in a lawful way. And if you look at defendant's reply brief, defendant even concedes, quote, Officer Saunders did not deliberately create exigencies in order to circumvent the Fourth Amendment. And that was restated here today. But Kentucky v. King says that's what police-created exigency is. Acting to violate the Fourth Amendment. So there's no merit to this argument that these exigencies were police-created and should not be considered by the courts. The trial court considered everything. The trial court considered the technology. The officer testified that there was a streamlined process in Mattoon, but he also testified that Carl Clinic is in Champaign. He has no knowledge at midnight of what Champaign has available for him. The court heard all of this and found that exigency existed. And we would ask that you affirm that. I want to address the medical draw shortly. You can affirm on any basis in the record. And here the defendant stipulated that there was a blood alcohol test that showed .176 two hours after the accident. Illinois law provides for the admission of that test into evidence. And defendants stipulated to it, which means we don't have to prove additional facts. They stipulated to the fact it's in the evidence. It is available to be considered. It does not mean that by including that in the stipulation, this is now tantamount to a guilty plea. If you recall, defendants stipulated to the blood alcohol content test that was done based on Officer Saunders' request under the implied consent statute. Despite stipulating to that fact, defendants maintained the right as they are here today to challenge the constitutionality of the statute that granted authority for that blood test. Defendant just as easily could have challenged the constitutionality of the authority for admission of a blood test, which is necessary for medical treatment. They did not. We are not, as a state, required to ignore facts stipulated to in the record and in evidence. We just aren't. The stipulation did not result in a tantamount guilty plea. And we would ask that you affirm. Beyond exigency, there was also this separate finding of consent that was made under the implied consent statute at the request of defense counsel. And consent is another exception to the warrantless search. Although the defendant recognizes that, they don't do any analysis under the implied consent law based upon their belief that that statute is unconstitutional. Officer Saunders did testify he relied on the implied consent statute. He arrived at the hospital. He read the warning to motorists to the defendant. There was no consent withdrawn. And the blood test was taken. And the court found that these facts are consistent with the implied consent statute and that the blood draw was taken with consent under that statute. Defendant argues, though, that the trial court's finding was an error and relies on McNeely and Birchfield to make the argument. But the problem is, those cases did not implicate, or as I believe Birchfield phrased it, does not call into conduct the implied consent statutes of the other states. So there is no defense that can be made for the argument here when you have two courts expressly stating, we recognize all these states have implied consent laws. McNeely said, we recognize that they have implied consent laws and that you're not allowed to refuse. But we're not addressing those facts here. They're not properly before us. Birchfield, though, it was not a categorical statement that there would never be a proper way for an implied consent statute to have a blood draw. What it said is that in that case, if the implied consent statute does not allow for the refusal without criminal penalties to attach, then it's a violation. But in Illinois, we have civil penalties and we have evidentiary consequences that come if you refuse under an implied consent statute. That is not what Birchfield said. McNeely and Birchfield do not support the position that the defendant takes here. On all the other issues, I will rely on my brief and we would ask that this Court affirm. Thank you. Thank you, Ms. Johnson. Ms. Varughese, rebuttal argument. Just a few points, Your Honor. In regards to the stipulated bench trial, verbal comments made during the bench trial to preserve an issue, then what would be there to stop a verbal comment during a bench trial to preserve an issue? For instance, if the defendant filed a motion to suppress identification evidence or BAC evidence during a bench trial and then during trial indicated that they wished to preserve that issue, that would still not be enough to get past plain error. Enoch expressly holds that to properly preserve an issue, a defendant must object at trial and file a post-trial motion. Defense counsel did not do so in this case and thus the stipulated bench trial was tantamount to a guilty plea. As far as exigent circumstances goes, the State is correct in pointing out that if the officer obtains consent right away, the officer is not obligated to go seek a warrant before determining if the individual is able to provide consent or whether there are exigent circumstances. That is not within the meaning of the Fourth Amendment. This case presents the question of consistency. Consistency in the manner in which issues are preserved on appeal and consistency in determining when a warrant must be obtained. The State's argument is inconsistent. In regards to implied consent law, the State overlooks that the specific provision being challenged in this case is Section 501.1b where it states that consent is where an individual who is dead, unconscious, or incapable of revoking consent is automatically imputed consent. While McNeely and Burchfield did not disapprove of implied consent laws, that is not the provision at issue in this case. Implied consent laws allow motorists the opportunity to either provide actual consent or to revoke consent. So when an individual provides actual consent under Illinois' implied consent law, the consent may be reasonable and the search may be reasonable when determining the totality of the circumstances. The search must be justified under one of the other exceptions to the Fourth Amendment. Here, Section 501.1b does not allow an individual to revoke that consent, and then it allows the Court and the State to find that the Fourth Amendment search is reasonable under Fourth Amendment consent. Fourth Amendment precedent demands that a totality of the Thus, there was no consent in this case. There was no existing circumstances. And for these reasons, we ask that this Court vacate Mr. Fogey's conviction and renew it for a new trial. Thank you, counsel. Thank you both. The case will be taken under advisement and a written decision shall issue.